IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**TONY RANDALL QUESINBERRY,**

    **Plaintiff,**

v.                                                Civil Action No. 1:16-cv-02151

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## **PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is Plaintiff's Motion for Summary Judgment (ECF No. 17), Plaintiff's Memorandum in Support of Motion for Summary Judgment (ECF No. 18) and Defendant's Brief in Support of Defendant's Decision (ECF No. 20). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

## Background

Claimant, Tony Randall Quesinberry, filed an application for DIB on May 3, 2012. Claimant alleged disability beginning January 25, 2012. The claim was denied initially on February 6, 2013, and upon reconsideration on April 29, 2013. Claimant filed a request for hearing on June 11, 2013. A video hearing was held on July 3, 2014. Claimant appeared in Bluefield, West Virginia, and the Administrative Law Judge presided over the hearing from Roanoke, Virginia. The Administrative Law Judge (ALJ) denied Claimant's applications on September 22, 2014 (Tr. at 12-28). The Appeals Council denied Claimant's request for review on January 15, 2016 (Tr. at 1-3). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first

three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The

> decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of January 25, 2012, and meets the insured status requirements through March 31, 2015 (Tr. at 14). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: lumbar degenerative disc disease status post lumbar fusion and laminectomy/ failed back surgery syndrome; history of right tibia and fibula fracture status post open reduction internal fixation (ORIF); major depressive disorder, generalized anxiety disorder; and learning disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 15). The ALJ then found that Claimant has a residual functional capacity to perform a range of work at the light exertional level (Tr. at 17). The ALJ found Claimant would have the following limitations: Claimant is prohibited from using his lower extremities to operate foot controls. Claimant is limited to occasionally climbing ramps and stairs, kneeling and crouching and he is prohibited from crawling and climbing ladders, ropes or scaffolds. Claimant is capable of frequently balancing, stooping and bending. Claimant is required to avoid concentrated exposure to temperature extremes, dust, humidity, wetness and pulmonary irritants. The claimant is required to avoid all exposure to vibrations and hazards, including dangerous moving machinery and unprotected heights. Claimant is capable of performing simple, easy to learn, repetitive, unskilled work activity. (*Id.*) The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 26). The ALJ concluded that considering Claimant's age, education, work experience and

residual functional capacity (RFC), there were jobs that existed in significant numbers in the national economy that he could perform such as night cleaner, order filler and convenient store clerk (Tr. at 27). Consequently, Claimant was found not under a disability. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on July 23, 1970. He last finished the ninth grade. In school he participated in "a learning disorder class" (Tr. at 42).

6

## The Medical Record

The undersigned adopts the medical record proposed by Claimant and Defendant to the extent as follows: On approximately March 2, 2012, Philip B. Robertson, M.D., of Psychiatric Associates of the Virginias, saw Claimant for anxiety and depression and managed his medications (Tr. at 597). Claimant's examination was unremarkable with a normal mood and intact thought process (Tr. at 597). Claimant reported depression and anxiety from multiple family issues including his father's cancer and a divorce (Tr. at 598- 599). On approximately April 27, 2012, he was doing better on Xanax and his anxiety had decreased and his sleep was "so so" (Tr. at 786). Dr. Robertson reported that Claimant was well-groomed, cooperative, and calm, and he had appropriate affect, normal speech, intact thought process, and no hallucinations, delusions or suicidal ideation. He was fully oriented with an intact memory and intact judgment and insight. (*Id.*)

On approximately July 23, 2012, Claimant was sleeping "okay" but did not want to leave his house; he reported that his neighbor had fired a gun at him and his son (Tr. at 631). His Zoloft was increased. (*Id.*) He was anxious and depressed but well-groomed, cooperative, and calm, and he had appropriate affect, normal speech, intact thought process, and no hallucinations, delusions or suicidal ideation. He was fully oriented with an intact memory and intact judgment and insight.

On approximately October 1, 2012, Stephen Nutter, M.D., performed a consultative internal medicine examination of Claimant, noting that he had a history of back pain since a 2008 car accident and prescriptions for opioid narcotic pain medications (Tr. at 610). Dr. Nutter noted that Claimant underwent a lumbar laminectomy with fusion at L5-S1 in 2009. (*Id.*) Dr. Nutter noted that an MRI of Claimant's lumbar spine indicated degenerative disc disease. Dr.

Nutter noted that Claimant had alleged constant low back pain that is aggravated by bending, stooping, sitting, lifting, standing, coughing and riding in a car. (*Id.*) Dr. Nutter also noted that Claimant underwent open reduction internal fixation for a tibia fibula fracture approximately 15 years prior to the evaluation. (*Id.*)

Upon examination, Dr. Nutter noted that Claimant ambulated with a mildly limping gait that was not unsteady, lurching or unpredictable (Tr. at 611). However, Claimant did not require an assistive device. (*Id.*) Claimant appeared uncomfortable in the sitting and supine positions. Claimant complained of back pain with range of motion testing of his wrists and shoulders (Tr. at 612). Claimant had decreased grip strength on the right side. (*Id.*) Claimant complained of back pain with range of motion testing of the hips and lumbar spine (Tr. at 612-613). Claimant had tenderness in his right knee and his ankles, bilaterally (Tr. at 612). However, Claimant's legs revealed no redness, warmth, swelling, fluid or crepitus (Tr. at 612-613). Claimant had tenderness to the lumbar paraspinal muscles (Tr. at 613). Straight leg raising is limited to 20 degrees on the right and 10 degrees on the left due to stiffening of his legs and tightening of his entire body, with complaints of low back pain. (*Id.*) Claimant appeared unable to stand on one leg at a time due to back pain. (*Id.*) Claimant had 5/5 strength in his upper extremities and 3/5 strength in his lower extremities. (*Id.*) There was no evidence of atrophy. Claimant was unable to walk on his heels and he is unable to squat. Claimant had only minimal difficulty balancing when performing tandem gait. Dr. Nutter diagnosed Claimant with chronic lumbar strain with degenerative disc disease and posttraumatic arthritis. (*Id.*) On approximately October 18, 2012, Claimant was having trouble sleeping, but was well-groomed, cooperative, and calm, and he had appropriate affect, normal speech, intact thought process, and no hallucinations, delusions or suicidal ideation (Tr. at 630). His prescriptions for Zoloft and Seroquel were increased. (*Id.*)

On January 28, 2013, Claimant underwent a psychological evaluation by Kelly Robinson. M.A., of Psychological Assessment and Intervention Services (Tr. at 622). Ms. Robinson noted that Claimant alleged having bipolar disorder and anxiety. Claimant alleged that he had mood swings and became very angry, and had episodes of depression with fatigue, withdrawal from others, difficulty sleeping, and feelings of worthlessness and hopelessness (Tr. at 622-623). He alleged that he has a loss of interest in activities, as well as difficulty concentrating (Tr. at 622). Upon examination, Ms. Robinson noted that Claimant was depressed and his affect was restricted, but he was alert and oriented, his thought process was logical and coherent and his immediate, recent, and remote memory were within normal limits (Tr. at 624-625). Ms. Robinson noted that Claimant's concentration was within normal limits (Tr. at 625). Claimant was diagnosed with major depressive disorder, anxiety disorder and alcohol abuse, in remission. (*Id.*) Ms. Robinson noted that Claimant did not meet the criteria for bipolar disorder, as he did not have hypomanic or manic episodes. She also noted that Claimant's social functioning was mildly deficient during the evaluation, and his pace was mildly deficient (Tr. at 626). His prognosis by Ms. Robinson was fair. (*Id.*)

In February 2013, Claimant saw his psychiatrist, Philip B. Robertson, M.D., and reported difficulty sleeping, anxiety, and "not doing too good" related to his seventeen-year-old daughter's pregnancy (Tr. at 629, 789). He was well-groomed, cooperative, and calm, and he had appropriate affect, normal speech, intact thought process, and no hallucinations, delusions or suicidal ideation (Tr. at 629). He was fully oriented with an intact memory and intact judgment and insight. (*Id.*)

On approximately March 26, 2013, Yogesh Chand, M.D., examined Claimant, noting that he complained of aching, throbbing pain in his lower back with numbness in his left lower

extremity (Tr. at 767-769). X-rays taken of Claimant's lumbar spine revealed a solid L5-S1 fusion and early degenerative joint disease at L4-L5 (Tr. at 768). Upon examination, Dr. Chand noted that Claimant had normal range of motion "in its entirety" (Tr. at 769). Claimant was neurologically and musculoskeletally intact, with negative straight leg raise testing bilaterally. (*Id.*) He also noted Claimant was "moving a large rock" nine weeks prior and then complained of side and back pain (Tr. at 768).

On approximately May 15, 2013, Claimant reported to Dr. Robertson that he was having good days and bad days, and that he was trying to deal with his daughter's pregnancy (Tr. at 790, 792). He was depressed with a constricted affect and impaired insight, but was well groomed and cooperative with normal speech, intact orientation, and normal judgment.

On approximately September 5, 2013, Claimant's treating physician, Harold A. Cofer, Jr., M.D., at Bluewell Family Clinic for pain management, examined Claimant and he had tenderness of the lumber spine and limited range of motion and limited strength in his legs (Tr. at 816). He had a limp and was ambulating with a cane, and he exhibited limited range of motion and slightly reduced motor strength (Tr. at 816). He was walking with a cane (Tr. at 820). On approximately October 1, 2013, Claimant told Dr. Robertson that he had "been alright" and was electing not to take his antidepressant medications (Tr. at 794).

On approximately November 1, 2013, Claimant told Kathleen Burge, AORN, that his back pain was improving and that his leg pain was moderate (Tr. at 802-807). He had no weak limbs, no numbness in his hands, feet or legs, no tingling, and no swelling (Tr. at 803). His motor strength and tone were normal (Tr. at 804).

On approximately December 26, 2013, Dr. Cofer reported that Claimant was ambulating with a normal gait without an assistive device, and although he had a limited range of motion of

the lumbar spine, he had 5/5 muscle strength in his arms and legs (Tr. at 810-812). He had positive straight leg raising in the seated and supine positions (Tr. at 812). Claimant's back and leg pain were improving; he was not using a cane and not limping; and he had full motor strength and normal tone (Tr. at 802-808). Claimant had normal gait and was not using a cane; he exhibited full motor strength 5/5 but positive straight leg raising tests (Tr. at 812).

On approximately February 26, 2014, Claimant reported to Dr. Cofer that he was experiencing joint and back pain but no muscle aches, no muscle weakness, no cramping, no swelling in his arms or legs, and no difficulty walking (Tr. at 798). He also denied numbness, tingling, balance problems, or falls. (*Id.*) Upon examination, he had normal gait and no limp and did not use any assistive device (Tr. at 799). Dr. Cofer noted that while Claimant had tenderness of the paraspinal region at L3, he had normal range of motion throughout his lumbar spine. (*Id.*) Dr. Cofer noted that Claimant had positive straight leg raising on the right side in the supine position, but negative seated straight leg raising (Tr. at 799). Dr. Cofer also noted that Claimant had 5/5 motor strength throughout his lower extremities. (*Id.*) No further treatment was recommended (Tr. at 800).

On approximately May 25, 2014, Dr. Cofer noted that Claimant appeared healthy and was in no acute distress (Tr. at 850-851). Claimant ambulated with a normal gait, with no assistive device (Tr. at 851). Claimant had continued positive right-sided straight leg raising in the supine position (Tr. at 852). However, Claimant had normal range of motion of the lumbar spine and 5/5 muscle strength throughout his lower extremities. (*Id.*)

On approximately June 27, 2014, Dr. Cofer prepared a medical source statement, noting that Claimant was limited to lifting up to 10 pounds occasionally and was precluded from carrying any weight (Tr. at 853). Claimant was limited to standing for 20 minutes in an 8-hour

11

workday, walking for 10 minutes in an 8-hour workday and sitting for 1 hour in an 8-hour workday (Tr. at 854). Claimant required a cane to ambulate and could only ambulate 1 yard without a cane. (*Id.*) Claimant was precluded from pushing and pulling with his upper extremities and he was capable of frequently reaching (Tr. at 855). Claimant was limited to occasionally handling, fingering and feeling with his left upper extremity. Claimant was capable of frequently operating foot controls. (*Id.*) Claimant was precluded from climbing ramps, stairs, ladders and scaffolds, as well as from balancing, stooping, kneeling, crouching and crawling (Tr. at 856). Claimant was precluded from exposure to unprotected heights and moving machinery (Tr. at 857). Claimant was limited to occasional exposure to humidity, wetness, pulmonary irritants, temperature extremes and vibrations. (*Id.*) Dr. Cofer noted that Claimant cannot ambulate without an assistive device and he cannot walk a block on rough or uneven surfaces (Tr. at 858).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to adequately evaluate all relevant evidence (ECF No. 18). Claimant argues that the ALJ improperly relied upon opinions from non-examining sources and failed to properly consider the opinions of treating physicians. Additionally, Claimant asserts that the ALJ failed to properly consider and analyze psychological impairments. (*Id.*) In response, Defendant asserts that *res judicata* applies to the period before the prior ALJ's decision of January 24, 2012, precluding consideration of evidence prior to that date in the current matter (ECF No. 20). Defendant avers that the ALJ gave appropriate weight to the opinion evidence and properly formulated Claimant's mental residual functional capacity (MRFC) assessment. (*Id.*)

Discussion

A RFC represents the most that an individual can do despite his or her limitations or restrictions. *See* Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." *Id.*

Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014). This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s). *Id.* In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). In making this assessment, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including

the functions' listed in the regulations.[1]" *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (quoting Social Security Ruling 96-8p, 61 Fed. Reg. 34,474, 34, 475 (July 2, 1996). Only after such a function-by-function analysis may an ALJ express RFC "in terms of the exertional levels of work." *Id.* (quoting SSR 96-8p, 61 Fed. Reg. at 34,475).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." *Id.*

In *Mascio*, the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." *Id.* The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Id.* The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." *Id.* Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ

---

[1] The listed functions include: the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering and carrying out instructions and in responding appropriately to supervision, coworkers and work pressures in a work setting"; and (3) other work-related abilities affected by impairments "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses and impairment(s) which impose environmental restrictions." See 20 C.F.R. § 416.945(b)-(d).

fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id* (*Citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)); *see also*, *Ashby v. Colvin*, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

In the present matter, the ALJ held at step three of the sequential evaluation:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant alleged that he has difficulty completing tasks and concentrating. He alleged that his attention span varies. He alleged that he has difficulty handling stress. However, the record indicates that the claimant is alert and oriented and his concentrations is intact. It was also noted that the claimant's memory, judgment and insight are fair. It was noted that the claimant's thought process is goal directed and coherent (Tr. at 16).

The Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.*

In the present case, the ALJ stated in Claimant's RFC that "The claimant is capable of performing simple, easy to learn, repetitive, unskilled work activity" (Tr. at 17). Additionally, the ALJ's hypothetical to the VE at the hearing included limitations to "simple, easy to learn, unskilled work activity" (Tr. at 74). Pursuant to *Mascio*, the ALJ's hypothetical question to the VE and the RFC assessment of Claimant limiting Claimant's ability to perform simple tasks is not the same as finding that Claimant is limited in the ability to stay on task.

15

"Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015)). The undersigned suggests the District Judge remand this case for the ALJ to explain either why Claimant's moderate limitations in concentration, persistence or pace at step three do not translate into a limitation in Claimant's RFC or explain why the limitation is not necessary.

Accordingly, the undersigned respectfully recommends that the presiding District Judge remand this matter pursuant to the fourth sentence of 42 U.S.C. § 405(g). The undersigned makes no recommendation as to Claimant's remaining arguments. These issues may be addressed on remand.

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Motion for Summary Judgment (ECF No. 17) to the extent Plaintiff seeks remand, **DENY** the Defendant's Brief in Support of Defendant's Decision (ECF No. 20), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to

file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 31, 2017

Dwane L. Tinsley
United States Magistrate Judge